1  **SEYFARTH SHAW LLP**
Kristina M. Launey (SBN 221335)
2  klauney@seyfarth.com
Julie G. Yap (SBM 243450)
3  jyap@seyfarth.com
400 Capitol Mall, Suite 2350
4  Sacramento, CA 95814-4428
Telephone:  (916) 448-0159
5  Facsimile:   (916) 558-4839

6  **SEYFARTH SHAW LLP**
Simon L. Yang (SBN 260286)
7  syang@seyfarth.com
Christopher Im (SBN 312838)
8  cim@seyfarth.com
333 S. Hope Street, Suite 3900
9  Los Angeles, California 90071
Telephone:   (213) 270-9600
10  Facsimile:   (213) 270-9601

11  Attorneys for Defendants
WINCO FOODS, LLC, and WINCO
12  HOLDINGS, INC.

13

14                    UNITED STATES DISTRICT COURT

15                   CENTRAL DISTRICT OF CALIFORNIA

16                          EASTERN DIVISION

17

18  ALFRED JOHNSON, individually and on      Case No. 5:17-cv-2288
behalf of all others similarly situated,
19                                           **DEFENDANTS WINCO FOODS,
                    Plaintiffs,              LLC'S & WINCO HOLDINGS,
20                                           INC.'S NOTICE OF REMOVAL OF
            v.                               CIVIL ACTION TO THE UNITED
21                                           STATES DISTRICT COURT**
WINCO FOODS, LLC, a Delaware limited
22  liability company, WINCO HOLDINGS,       [*Filed Concurrently with Notice of
INC., an Idaho Corporation, and DOES 1      Interested Parties, Declaration of
23  through 10, inclusive,                   Jennifer Solecki, Civil Case Cover Sheet
                                             and Corporate Disclosure Statement*]
24                  Defendants.
                                             San Bernardino County Superior Court
25                                           Case No. CIVDS 1716405

26                                           Action Filed:     August 23, 2017
                                             Complaint Served: October 10, 2017
27

28

─────────────────────────────────────────────────────────
              DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF ALFRED JOHNSON AND HIS ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that Defendants WINCO FOODS, LLC ("WinCo") and WINCO HOLDINGS, INC. ("WinCo Holdings") (collectively, "Defendants") hereby file this Notice of Removal pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, based on Class Action Fairness Act ("CAFA") jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331[1], and remove the above-captioned matter from the Superior Court of the State of California for the County of San Bernardino to the United States District Court for the Central District of California, Eastern Division.  Removal is proper for the following reasons:

## I.   BACKGROUND AND PROCEEDINGS IN STATE COURT

1.   On August 23, 2017, Plaintiff, Alfred Johnson, filed an unverified class-action complaint entitled: "*ALFRED JOHNSON, individually and on behalf of all others similarly situated, Plaintiff v. WINCO FOODS, LLC, a Delaware limited liability company, WINCO HOLDINGS, INC., an Idaho corporation, and DOES 1 through 10, inclusive, Defendants*," designated as Case No. CIVDS 1716405 in the Superior Court of the State of California for the County of San Bernardino (the "Complaint").

2.   Within the Complaint, Plaintiff asserts the following nine (9) causes of action: (1) Unpaid Overtime (Labor Code §§ 510 and 1198); (2) Unpaid Minimum Wages (Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198); (3) Failure to Provide Meal Periods (Labor Code §§ 226.7, 512(a), and 1198); (4) Failure to Provide Rest Periods (Labor Code §§ 226.7 and 1198); (5) Non-Compliant Wage Statements and Failure to Maintain Payroll Records (Labor Code §§ 226(a), 1174(d), and 1198); (6) Wages Not Timely Paid Upon Termination (Labor Code §§ 201-203); (7)

---

[1] To the extent Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. §§ 1331 and 1332, the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a).

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

Unreimbursed Business Expenses (Labor Code § 2802); (8) Unlawful Business Practices regarding wage related allegations (Bus. & Prof. Code §§ 17200, *et seq.*); and (9) Unlawful Business Practices regarding meal and rest break related allegations (Bus. & Prof. Code §§ 17200, *et seq.*).

3.     Plaintiff personally served WinCo and WinCo Holdings with the Complaint and the Summons on or about October 10, 2017.  A true and correct copy of the Complaint, Summons, and Civil Case Cover Sheet is attached hereto as **Exhibit A**.

4.     The Complaint seeks to certify a class of "[a]ll persons who worked for Defendants as nonexempt, hourly-paid employees in California, including retail, warehouse, and distribution center locations, within four years prior to the filing of this complaint until the date of trial."  (Ex. A, Compl. ¶ 40).

5.     The Complaint further seeks to certify a subclass of "[a]ll persons who worked for Defendants as nonexempt, hourly-paid employees in California, including retail, warehouse, and distribution center locations, within one year prior to the filing of this complaint until the date of trial." (Ex. A, Compl. ¶ 41).

6.     The Complaint includes myriad allegations, including the following:

- Defendants required Plaintiff and class members to work over eight hours per day, over twelve hours per day, or over forty hours per week and failed to pay all legally required overtime compensation.  (Ex. A, Compl. ¶ 44).

- Defendants failed to properly calculate the "regular rate" of pay on which Plaintiff and class members' overtime rate of pay was based.  *Id.*

- Defendants failed to pay Plaintiff and class members at least minimum wages for all hours worked.  *Id.*

- Defendants failed to provide Plaintiff and class members with meal periods.  *Id.*

- Defendants failed to provide Plaintiff and class members with rest periods.  *Id.*

- Defendants failed to provide Plaintiff and class members with complete and accurate wage statements.  *Id.*

- Defendants failed to pay earned overtime wages, minimum wages, and rest period premiums due to Plaintiff and class members upon their discharge.  *Id.*

- Defendants failed to timely pay overtime wages, minimum wages, and meal and rest period premiums to Plaintiff and class members during their employment.  *Id.*

2

- Defendants failed to pay Plaintiff and class members for the costs of mandatory pre-employment physical examinations and drug testing.  *Id*.

- Defendants failed to reimburse Plaintiff and class members for business-related expenses they incurred as a result of their employment.  *Id*.

- Defendants failed to provide written notice of information material to Plaintiff and class members' employment.  *Id*.

- Defendants engaged in unlawful and unfair business practices.  *Id*.

7.     Defendants deny all material allegations in the Complaint, but treat the allegations as true for purposes of this Notice of Removal.  Defendants have not filed any pleadings or papers in this action prior to this Notice of Removal.  **Exhibit A** constitutes all pleadings, processes, and orders properly served on Defendants in this action.

## II.     TIMELINESS OF REMOVAL

8.     Plaintiff personally served Defendants' registered agent for service of process on or about October 10, 2017.  *See* **Exhibit A**.  This Notice of Removal is timely because it is being filed within 30 days of Defendants' receipt of the Summons and Complaint and within one year of the commencement of this action.  *See* 28 U.S.C. § 1446(b); *see als*o *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining the time for filing a notice of removal does not run until a party has been formally served with the summons and complaint under applicable state law).

## III.     JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

9.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA") because (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) the action is pleaded as a class action involving more than 100 putative class members  (Ex. A, Compl., ¶ 45), and (3) at least one member of the putative class is a citizen of a State different from Defendants. *See* 28 U.S.C. § 1332(d).

### A.     Diverse Citizenship of the Parties

10.     CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

State different from any named defendant. *See* 28 U.S.C. 1332(d)(2)(A). *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (explaining that to achieve its purposes CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement in 28 U.S.C. § 1332(d)(2)). Here, such minimal diversity exists among the parties. In fact, as set forth below, complete diversity exists between Plaintiff and Defendants.

### 1. Plaintiff Is a Citizen of California

11. "To establish citizenship for diversity purposes, a [natural] person must be both (1) a citizen of the United States, and (2) be domiciled in [one] state." *Chamness v. Stonebridge Life Ins. Co.*, Case No. CV09-0780 AHM (JCx), 2009 WL 734137, at *3 (C.D. Cal. Mar. 18, 2008) (denying plaintiff's motion for remand because defendant's removal notice established complete diversity).

12. A person's domicile is the place in which he or she resides with the intent to remain indefinitely. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return"); *see also Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (noting that an individual is a citizen of the state in which he is domiciled; domicile is determined by an individual's (1) residence in a state, and (2) his intent to remain indefinitely).

13. Citizenship is determined by an individual's domicile at the time the lawsuit is filed. *See Lew v. Moss*, 797 F.2d 749, 750 (9th Cir. 1986); *see also Zavala v. Deutsche Bank Trust Co. Ams.*, No. C 13-1040 LB, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").

14. Here, Plaintiff alleges that he "is a resident of Victorville, in San Bernardino County, California." (Ex. A, Compl., ¶ 4). He further alleges that he was employed by Defendants at their "grocery store location in Victorville, California." (*Id.*) Indeed, as

4

1    part of his Application for Employment, Plaintiff listed a California address and

2    maintained a California address on file for purposes of his personnel file, payroll checks,

3    state payroll, and tax withholdings during the period of his employment.  (Declaration of

4    Solecki ("Solecki Decl."), ¶ 5).  Defendants are informed and believe, and on that basis

5    allege, that Plaintiff's last known address is in the City of Victorville, California.  (*Id*. at ¶

6    11.)

7        15.     Accordingly, Plaintiff was at all relevant times, and still is, a citizen of the

8    State of California.

9           **2.**     **WinCo & WinCo Holdings Are Not Citizens of California and**

10              **Are Therefore Diverse to Plaintiff**

11        16.     WinCo is a citizen of both Delaware and Idaho and is not now, and was not

12    at the time of the filing of this action, a citizen of the state of California within the

13    meaning of 28 U.S.C. § 1332(c)(1).

14        17.     For purposes of diversity jurisdiction under CAFA, "an unincorporated

15    association" need not allege the citizenship of its members, but rather "shall be deemed to

16    be a citizen of the State where it has its principal place of business and the State under

17    whose laws it is organized."  28 U.S.C. § 1332(d)(10); *Johnson v. Columbia Props.*

18    *Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (limited liability companies are

19    "unincorporated associations" for purposes of 28 U.S.C. § 1332…").  CAFA "abrogates

20    the traditional rule that an unincorporated association shares the citizenship of each of its

21    members for diversity purposes . . . ."  *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d

22    1026, 1032 n.13 (9th Cir. 2009) (A. Kleinfeld, concurring).  Thus, to determine

23    jurisdiction under CAFA, a limited liability company, need only allege its "principal

24    place of business and the State under whose laws it is organized."  28 U.S.C. §

25    1332(d)(10); *see e.g., Abrego v. Dow Chem. Co.*, 443 F. 3d 676, 684 (9th Cir. 2006)

26    (stating that CAFA "departs from the rule that frequently destroys diversity jurisdiction,

27    that a limited partnership's or unincorporated association's citizenship can be determined

28    only by reference to all of the entity's members.") (citations and internal quotations

omitted); *Marroquin v. Wells Fargo, LLC*, No. 11–CV–163–L–BLM, 2011 WL 476540 at *2 (S.D. Cal. Feb. 3, 2011) (holding that an LLC is considered an "unincorporated association" in a CAFA case, and "is 'deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized'") (citing 28 U.S.C. § 1332(d)(10)).

18.    WinCo is, and has been at all times since this action commenced, a limited liability company formed under the laws of the State of Delaware with its principal place of business in the State of Idaho. (Solecki Decl., ¶ 3). WinCo's principal place of business is Idaho because its "nerve center" is located in Idaho. (*Id.*) Specifically, WinCo's corporate headquarters are located exclusively in the State of Idaho, and all of WinCo's executive and administrative functions take place in Idaho. (*Id.*)

19.    WinCo Holdings is a citizen of Idaho and is not now, and was not at the time of the filing of this action, a citizen of the state of California within the meaning of 28 U.S.C. § 1332(c)(1). (*Id.* at ¶ 4).

20.    "[A] corporation shall be deemed to be a citizen of every State … by which it has been incorporated and of the State … where it has its principal place of business." 28 U.S.C. § 1332(c); *Davis*, 557 F.3d at 1028 ("[A] corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'"). Courts determine a corporation's principal place of business under the "nerve center" test. *Hertz Corp. v. Friend*, 599 U.S. 77, 92-93 (2010). Under that test, a corporation's principal place of business is where its "officers direct, control and coordinate the corporation's activities." *Id.* at 92. A corporation typically directs and coordinates its activities from its headquarters. *Id.*

21.    WinCo Holdings is incorporated under the laws of the State of Idaho, with its principal place of business in Idaho. (Solecki Decl., ¶ 4). WinCo Holdings' principal place of business is Idaho because its "nerve center" is located in Idaho. (*See id.*) Specifically, WinCo Holdings' corporate headquarters are located exclusively in the State

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

of Idaho, and all of WinCo Holdings' executive and administrative functions take place in Idaho. (*See id*.)

22.     Accordingly, because Plaintiff is a citizen of California and both WinCo and WinCo Holdings are not citizens of California, diversity of citizenship exists between Plaintiff and Defendants for purposes of CAFA removal.

### 3.     Doe Defendants' Citizenship Must Be Disregarded

23.     The residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1191 n. 1 (9th Cir. 1988) (doe defendants need not join in removal); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal). Thus, Doe defendants 1 through 10 do not deprive this Court of jurisdiction.

### B.     **There Are More Than 100 Putative Class Members**

24.     CAFA requires that the aggregate number of members of proposed classes in a complaint be at least 100. *See* 28 U.S.C. § 1332(d)(5)(B).

25.     Plaintiff purports to represent a putative class of "[a]ll persons who worked for Defendants as nonexempt, hourly-paid employees in California, including retail, warehouse, and distribution center locations, within four years prior to the filing of this complaint until the date of trial." (Ex. A, Compl., ¶ 40).

26.     Plaintiff further purports to represent a putative subclass of "[a]ll persons who worked for Defendants as nonexempt, hourly-paid employees in California, including retail, warehouse, and distribution center locations, within one year prior to the filing of this complaint until the date of trial." (*Id.*).

27.     Plaintiff alleges the proposed class totals more than 100 individuals. (Ex. A, Compl., ¶ 45).

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

28.     During the putative class period, approximately 12,314 non-exempt, retail employees were employed in California, including former employees.  (Solecki Decl., ¶ 7).

**C.     The Amount in Controversy Exceeds the Jurisdictional Minimum Required for CAFA Removal**

29.     While Defendants deny any liability as to Plaintiff's claims and the ability for this action to proceed on a class basis, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs.  All calculations are based on the number of non-exempt, hourly paid retail employees employed in California during the putative class period.  In other words, even without factoring in non-exempt distribution center or other non-retail, non-exempt employees, the amount in controversy exceeds $5,000,000.  These calculations should not be construed as a concession by Defendants that class treatment is appropriate in this case, or that Plaintiff has standing to represent such a class, or that the proposed class would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.  Defendants expressly reserve the right to challenge Plaintiff's claims, adequacy and standing to represent any class, class definitions, and calculation of damages in all respects.

30.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  *See* 28 U.S.C. § 1332(d)(6).  Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Sen. Jud. Comm. Rep., S. Rep. No. 109-14, at 42 (2005).  Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  S. Rep. No. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in

8

favor of exercising jurisdiction over the case . . . . Overall, new § 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

31.     Here, as noted above, the Complaint seeks relief on behalf of "[a]ll persons who worked for Defendants as nonexempt, hourly-paid employees in California, including retail, warehouse, and distribution center locations, within four years prior to the filing of the complaint until the date of trial." (Ex. A, Compl., ¶ 40).  During the putative class period, approximately 12,314 non-exempt retail employees were employed in California, including former employees.  (Solecki Decl., ¶ 7).

32.     As set forth below, the amount in controversy on Plaintiff's class claims exceeds $5,000,000.00.  All calculations supporting the below estimates are based on the Complaint's allegations, assuming, without any admission, the truth of the facts alleged, and assuming solely for purposes of this Notice of Removal that liability is established.

### 1.     Labor Code § 226

33.     The Complaint alleges that in violation of Labor Code § 226(a), "Defendants have knowingly and intentionally provided Plaintiff and class member with uniform, incomplete, and inaccurate wage statements."  (Ex. A, Compl., ¶ 81).

34.     Labor Code § 226(e) provides an employee a minimum of $50 for the initial pay period in which a violation occurs, and $100 for each further pay period in which a violation occurs, up to a maximum penalty of  $4,000 per employee.  *See* Cal. Lab. Code § 226(e).  The statute of limitations for penalties under Labor Code § 226 is one year. *See* Cal. Civ. Proc. Code § 340(a).

35.     During the one year preceding the filing of the Complaint, there were approximately 7,979 putative class members that worked 184,197 pay periods.  (Solecki Decl., ¶ 8).

36.     By multiplying the number of pay periods by $100 and subtracting $50 up to a maximum of $4,000, the total amount in controversy for the § 226 claim alone would be **$18,020,750**.

37.     There were no assumptions or estimations made with respect to violation rates in this calculation.  Plaintiff alleges that Defendant knowingly and intentionally provided Plaintiff and class members with uniform wage statements that fail to correctly list the address of the legal entity that is the employer.  (Ex. A, Comp., ¶ 81).  While Defendant disputes this allegation, this would mean that every wage statement for every class member would have been incorrect.

38.     Therefore, based on the allegations in the Complaint, Plaintiff's inaccurate wage statement claim, by itself, satisfies the jurisdictional amount in controversy.

### 2.     Labor Code § 203

39.     The Complaint alleges that "Defendants willfully failed to pay Plaintiff and class members who are no longer employed by Defendants the earned and unpaid wages…including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." (Ex. A, Compl., ¶ 91).

40.     Labor Code § 203 states that the wages of an employee who quits "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a).

41.     The statute of limitations for recovery for waiting time penalties under Labor Code § 203 pay is three years.  *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010) (holding that a three year statute of limitations applied to § 203 claims).  Thus, for determining the amount in controversy, a three-year statute of limitations applies.

42.     5,251 individuals of the 12,314 member putative class are former employees.  Defendants deny that these 5,251 employees were not paid their final wages in a timely manner; however, assuming the truth of Plaintiff's allegations, the amount in

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

controversy for Plaintiff's waiting time penalties claim would be approximately **$13,295,532** [(5,251 former employees) x ($10.55/hour - Ex. A, Compl., ¶ 4) x (8 hours per day - *See* **Exhibit B**, § (E)(6)) x (30 days)].  (Solecki Decl., ¶ 10).

43.     Therefore, similar to the Labor Code § 226 claims, the Labor Code § 203 claims by itself well exceeds CAFA's jurisdictional minimum.

### 3.     Plaintiff's Remaining Claims

44.     As set forth above, the minimum jurisdictional amount in controversy is met based purely on the allegations in Plaintiff's Complaint regarding each of the two claims detailed above.

45.     However, with respect to the remaining claims, the addition of these would only extend the degree to which the amount in controversy minimum is exceeded.

46.     For example, with respect to Plaintiff's meal and rest break claims, based on the hourly rate alleged in the Complaint ($10.55) and just one meal or rest break penalty per week, and multiplying that by the number of workweeks in question, the total amount in controversy would be $12,212,669.45 for each of the meal and rest break penalties for a total of **$24,425,338.90**.  (*See* Solecki Decl., ¶ 9).

47.     Similarly, with respect to Plaintiff's overtime claim,[2] based on the hourly rate alleged in the Complaint ($10.55), multiplying it by 1.5, assuming just one violation per week, and multiplying the product by the number of workweeks in question, the total amount in controversy for unpaid overtime alone would be **$9,159,502.09**.

48.     Thus, while the waiting time penalties and inaccurate wage statement claims, each standing alone, meet the jurisdictional minimum,[3] if all of Plaintiff's claims are included, there is little doubt the $5,000,000 minimum would be met and exceeded.

[2] This calculation is based on Plaintiff's allegation that he should be awarded unpaid overtime as a result of working through his lunch.  Since lunch is normally 30 minutes, the amount in controversy is calculated by using 30 minutes of alleged overtime pay.
[3] Plaintiff did not set forth a claim for penalties under Labor Code § 1174.  Plaintiff simply alleges  "Defendants willfully failed to maintain accurate payroll records for Plaintiff and class members showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked."  (Ex. A,

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

### 4.  Attorneys' Fees

49.  Plaintiff also seeks attorneys' fees.  (Ex. A, Compl., ¶¶ 56, 116, 122, Prayer for Relief ¶¶ 8, 13, 21, 28, 34, 40, 46, 51, 56).  Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy").

50.  A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *See Longmire v. HMS Host USA, Inc.*, Civil No. 12-cv-2203 AJB (DHB), 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012 ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (citing *Brady*, 243 F. Supp. 2d at 1010-11); *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007) (attorneys' fees appropriately included in determining amount in controversy).

51.  In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012)

---

Compl., ¶ 87).  As such, Plaintiff alleges that every putative class member suffered a violation of Labor Code § 1174(d).  Labor Code § 1174.5 provides a civil penalty of $500 per violation of § 1174(d).  Cal. Lab. Code § 1174.5.  While Plaintiff did not assert penalties for this claim, if *arguendo*, they had, during the relevant time period, there were approximately 12,314 retail employees.  By multiplying the number of employees by the penalty amount of $500 the total amount in controversy for the §1174(d) claim is $6,157,000.  This claim alone would also meet the jurisdictional minimum for the amount in controversy.

(attorney's fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach".); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable).

52.     Thus, the attorneys' fees at issue would be at least 25% of the alleged damages, and equates to approximately **$7,829,070.50**.

### 5.     Summary of Total Amount in Controversy

53.     In sum, while the Court need not consider Plaintiff's reimbursement, meal and rest break violation, overtime, minimum wage, waiting time claims or his request for attorneys' fees, injunctive relief and other remedies to conclude that the amount in controversy requirement is satisfied, these additional claims for relief further illustrate that this removal petition is not a close call.  Jurisdiction is clear.  Assumptions based on Plaintiff's Complaint easily put at issue the following amounts:

| Claim | Amount In Controversy By Plaintiff's Allegations |
|---|---|
| 1. Labor Code § 226 | **$18,020,750** |
| 2. Labor Code § 203 | **$13,295,532** |
| **Sub-Total** | **$31,316,282** |
| 4. Attorneys' Fees (25%) | **$7,829,070.50** |
| **Grand Total** | **$39,145,352.50** |

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

54.     Because minimal diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

## IV.    FEDERAL QUESTION JURISDICTION

55.     This action is one over which this Court has original jurisdiction under 28 U.S.C. § 1331 and may be removed by Defendants pursuant to 28 U.S.C. § 1441 in that it is a civil action over which the district courts have original jurisdiction founded on claims arising under the laws of the United States.

56.     Federal courts have original jurisdiction over claims arising under § 301 of the Labor Management Relations Act (the "LMRA"), codified at 29 U.S.C. § 185 *et seq.* Under the LMRA, the district courts of the United States shall have original jurisdiction over any action involving the application of a collective bargaining agreement ("CBA"). 29 U.S.C. § 185(a).

57.     Section 301 confers federal jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."  29 U.S.C. § 185(a).  A collective bargaining agreement is such a contract, and § 301 preempts all state-law claims "founded directly on rights created by collective bargaining agreements …." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987).  State-law claims which require interpretation, analysis, and application of collective bargaining agreements are preempted by the LMRA.  *See, e.g.*, *Adkins v. Mireles*, 526 F.3d 531, 540-42 (9th Cir. 2008) (holding that claims for breach of the implied covenant of good faith and fair dealing, breach of contract, fraud, intentional infliction of emotional distress, and Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, were preempted by the LMRA because resolution of these claims would require an interpretation of the collective bargaining agreement).

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

58.     It is immaterial that Plaintiff avoided explicit reference to the applicable collective bargaining agreement in its Complaint.  State-law claims arising under a collective bargaining agreement are preempted; § 301 preempts all state-law claims if the claims actually depend on rights conferred by the collective bargaining agreement or require interpretation of a collective bargaining agreement.  *See Caterpillar, Inc.*, 482 U.S. at 393-94 (explaining that complete preemption occurs where the "pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule'") (citations omitted).

59.     Here, this Court has federal question jurisdiction because resolution of Plaintiff's claims is substantially dependent upon the Court's analysis and interpretation of the terms of a collective bargaining agreement.  Plaintiff's employment was governed by a CBA made between the parties in a labor contract and entered into by WinCo Holdings, Inc. and WinCo Foods #67 Hourly Employee Association.  A true and correct copy of the relevant CBA language, showing it has been in effect since March 15, 2013 and expired on February 26, 2017, is attached hereto as **Exhibit B**.  The CBA covers the entirety of Plaintiff's employment with WinCo.  *See* **Exhibit B**.  Plaintiff's claims will require the Court's analysis of the terms of the CBA.  For example, Plaintiff alleges that Defendants' rest break policy is unlawful on its face.  (Ex. A, Compl., ¶ 76).  Resolving Plaintiff's rest break claim will therefore require the Court to interpret the rest break provisions of the CBA.

60.     Accordingly, this Court has original jurisdiction over Plaintiff's class-action Complaint pursuant to 29 U.S.C. § 185.  This action, though it purports to raise only state-law claims, is necessarily federal in character; it "arise[s] under the … laws … of the United States" pursuant to 28 U.S.C. § 1331, and is removable to this federal court pursuant to 28 U.S.C. § 1441(b).

**V.    VENUE**

61.    Venue lies in the Central District of California pursuant to 28 U.S.C. §§ 1441, 1446(a), and 84(c)(2).  This action was originally brought in the Superior Court of the State of California, County of San Bernardino.  San Bernardino County falls within the jurisdiction of the United States District Court, Central District of California, Eastern Division.

**VI.    NOTICE OF REMOVAL**

62.    This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of San Bernardino.

**VII.    PRAYER FOR REMOVAL**

63.    **WHEREFORE**, Defendants pray that this civil action be removed from the Superior Court of the State of California for the County of San Bernardino to the United States District Court for the Central District of California.

DATED: November 9, 2017                    Respectfully submitted,

                                           SEYFARTH SHAW LLP


                                           By:   /s/ Julie G. Yap
                                                 Kristina M. Launey
                                                 Julie G. Yap
                                                 Simon L. Yang
                                                 Christopher Im

                                                 Attorneys for Defendants
                                                 WINCO FOODS, LLC and WINCO
                                                 HOLDINGS, INC.

16

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

42138240v.3